UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


JANA M. BROWN                                                                          PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:16cv546-DPJ-FKB

FREDERICK TAPPAN AND
JOHN AND JANE DOES 1-10                                                             DEFENDANTS

ORDER

This removed case is before the Court on Plaintiff Jana M. Brown's Motion to Remand [18]. Having fully considered the parties' memoranda and submissions, along with the pertinent authorities, the Court finds that diversity jurisdiction exists, so Brown's motion should be denied.

I.      Facts and Procedural History

This case stems from a September 2015 car accident involving Brown, a resident citizen of Mississippi, and Defendant Frederick Tappan, a college student residing in Mississippi. Pl.'s Compl. [1-1]. In response to the accident, Brown filed suit in the Circuit Court of Hinds County, Mississippi, on February 23, 2016. Notice of Removal [1] ¶ 1. On July 11, 2016, Tappan removed the case to this Court based on diversity jurisdiction, and the parties thereafter conducted jurisdictional discovery. When that discovery concluded, Brown moved to remand, acknowledging that the Notice of Removal was timely filed but arguing that Tappan is a non-diverse Mississippi citizen. Pl.'s Mot. [18] at 1; Pl.'s Mem. [19] at 2. Tappan responded that he is a Tennessee citizen [20], and Brown replied [21]. The Court, having considered the parties' arguments and relevant authority, is now prepared to rule.

1

II.     Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant" to federal district court. Tappan argues that removal to this Court is proper under 28 U.S.C. § 1332(a)(1), which grants the district courts original jurisdiction over civil actions between "citizens of different States" in which "the matter in controversy exceeds the sum or value of $75,000." The parties here do not contest the amount-in-controversy requirement, thus the sole question is whether complete diversity of citizenship exists.

From the outset, there is a presumption against a federal court having jurisdiction. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). The party invoking federal jurisdiction must rebut that presumption. *Id.* Likewise, if "diversity jurisdiction is properly challenged, that party also bears the burden of proof." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (citations omitted). Because Tappan invoked this Court's jurisdiction, he now must establish it by a preponderance of the evidence. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 814 (5th Cir. 2007). In determining whether Tappan has met that burden, the Court "may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." *Coury*, 85 F.3d at 249.

III.    Analysis

The issue is whether Tappan, a college student over the age of 21, is a non-diverse citizen of Mississippi or a diverse citizen of Tennessee. For purposes of the complete-diversity requirement, citizenship means domicile. *Mas*, 489 F.2d at 1399. A person acquires a "domicile of origin" at birth. *Acridge v. Evangelican Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir. 2003). That "domicile of origin" continues unless there is sufficient evidence of a

change. *Id.* A party establishes such a change by showing (1) "physical presence at the new location" and (2) "an intention to remain there indefinitely." *Coury*, 85 F.3d at 250.

Here, there is no dispute that Tappan was born in Tennessee, so Tennessee is his domicile of origin. But he and his parents moved to Mississippi in 2010, and he has remained in this state since then to attend school. Given his presence in this state, the question is whether his domicile changed from his domicile of origin—Tennessee—at any time before this suit was filed.

To answer that question, the Court looks first to the domicile of Tappan's parents. Tappan was a minor when he and his parents moved to Mississippi. "Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). So if Tappan's parents changed their domicile from Tennessee to Mississippi before Tappan turned 21, Tappan's domicile likewise changed.

There is no dispute that Tappan's parents moved to Mississippi at one point, so the question is whether they intended to remain in Mississippi indefinitely. *Coury*, 85 F.3d at 250. When determining intent to remain, courts consider several factors, no single one being determinative. *Id.* at 251. Factors include the "places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* Courts determine domicile in light of these objective facts; if a litigant's statement of intent conflicts with them, that statement—though relevant—is entitled to little weight. *Id.*

On this standard, the Court finds that Tappan's parents remained Tennessee citizens. To begin with, they lived in Memphis, Tennessee, at least from the time Tappan was born in 1994

3

through his tenth-grade year in high school. Tappan Dep. [18-1] at 7, 12. But after the tenth grade, Tappan had a spat with his football coach and wanted to transfer. *Id.* at 12. Had he transferred to a school within 20 miles, he would have lost a year of athletic eligibility, so in 2010, he and his family moved to a house in Southaven, Mississippi, that they had previously purchased as an investment property. *Id.* at 8, 12, 41. Despite this move, the family retained their Tennessee home, *id.* at 7, and maintained contacts in Tennessee. For example, Tappan's sister remained in a Memphis school, *id.* at 36, and it appears that Tappan's father pastored a church in Memphis, *see* Def.'s Resp. [20] at 2, 4. Once Tappan completed high school two years later, his parents returned to their Tennessee home, where they still reside with Tappan's sister, great grandfather, and grandmother. Tappan Dep. [18-1] at 7, 20. No one currently resides at the Southaven address, *id.* at 8, and Tappan's parents do not stay there, *id.* at 9. Finally, Tappan's father owns the vehicle Tappan was driving at the time of the accident; the vehicle is titled in Memphis and has a Tennessee license plate. *Id.* at 33–34.

Against these facts, Brown notes that Tappan's parents obtained a homestead exemption on the Mississippi residence, but this fact is not alone determinative. *See Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3:15-CV-3797-B, 2016 WL 1242628, at *2 (N.D. Tex. Mar. 30, 2016) ("Even if Wilson did take a homestead exemption for the Texas property, this alone is not enough to outweigh the evidence suggesting he is a Florida citizen.") (citing *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, No. 2:11-CV-0856, 2012 WL 262613, at *4–5 (W.D. La. Jan. 30, 2012), aff'd, 2012 WL 2254279 (W.D. La. June 14, 2012) (finding that individual changed domicile despite claiming homestead exemption in other state) (citing *Coury*, 85 F.3d at 254)).

On balance, the Court concludes that Tappan's parents never possessed an intent to remain indefinitely in Mississippi. They instead intended to return to Memphis after Tappan finished playing high-school football—which they did. And as such, Tappan was a Tennessee citizen through his 21st birthday. The question then becomes whether Tappan changed his citizenship once emancipated.

It is uncontested that when this case was filed, Tappan physically resided in Mississippi; less clear is whether he intended to remain here indefinitely. As discussed above, Tappan never altered his Tennessee "domicile of origin" before turning 21. But if he had an intent to indefinitely remain in Mississippi after that, he would be a Mississippi citizen. *Coury*, 85 F.3d at 250.

The parties point to conflicting evidence on this issue. According to Brown, Tappan intended to remain in Mississippi based on the following facts:

(1) Tappan attended and graduated from a Mississippi high school;
(2) He holds a Mississippi driver's license;
(3) He attends college in Mississippi;
(4) He pays in-state tuition;
(5) He has worked in Mississippi;
(6) His automobile insurance policy is issued to a Mississippi address; and
(7) He visits and keeps personal property at a Mississippi home owned by his parents.

Pl.'s Mem. [19] at 3–6; Reply to Resp. [21] ¶ 6.[1] Tappan counters with these facts, all supporting Tennessee citizenship:

(1) He considers himself a Tennessee citizen;
(2) He resides with his parents in Tennessee when not attending college classes;
(3) He receives mail at his parents' Tennessee address;
(4) He is registered to vote in Tennessee;
(5) He lived in Tennessee until 2010, when he moved with his parents to Mississippi for his final two years of high school;
(6) He has worked in Tennessee since 2011;
(7) He is a member of a church in Tennessee;

---

[1]Some of these facts relate more directly to events that occurred before Tappan turned 21.

  (8) He has sought post-graduation jobs only in Tennessee;
  (9) He drove a Tennessee-titled vehicle at the time of the accident; and
  (10) He holds an account with a Tennessee bank.

Def.'s Aff. [1-2] ¶ 1–5; Resp. to Mot. [20] at 1–3.

  At first blush, the most compelling facts for Brown's position are that Tappan received in-state tuition and had a Mississippi driver's license. But numerous courts have held that in-state tuition does not determine domicile. *See, e.g.*, *Lee v. Charles*, No. 12 CIV. 7374 JFK, 2013 WL 5878183, at *3 (S.D.N.Y. Nov. 1, 2013) ("It is well established that resident status for tuition purposes and citizenship for diversity jurisdiction purposes are two entirely distinct concepts.") (collecting cases and citing 13 Charles Alan Wright et al., Federal Practice and Procedure § 3619 (3d ed. 1998)). As for the Mississippi driver's license, Tappan explains that he received his first license while in high school in Southaven and has maintained it. Tappan Dep. [18-1] at 10, 11. That testimony softens the impact of the Mississippi license, at least to some extent.

  Regardless, no one fact is determinative; they must all be weighed. *Coury*, 85 F.3d at 251. And here, Tappan's facts support his stated intent to return to Tennessee when he completes his studies. Significantly, he goes home to his parents' Tennessee residence; has worked summers in Tennessee; maintains governmental, business, familial, and spiritual ties in Tennessee; and is looking exclusively to Tennessee for post-graduate employment. These facts indicate that after turning 21, Tappan did not intend to indefinitely remain in Mississippi. *See Kennedy v. Cincinnati Ins. Co.*, No. 16-16537, 2017 WL 192396 (E.D. La. Jan. 18, 2017) (finding college student was citizen of home state under similar facts). So while his athletic and educational pursuits led him to reside in Mississippi, the evidence is insufficient to show he ever abandoned his original domicile: Tennessee.

IV. Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. Based on the foregoing, the Court finds complete diversity of citizenship exists and thus denies Brown's Motion to Remand [18].

Additionally, the Court notes that Brown identified Defendant as "Frederick Tappan" in the Complaint, but Defendant clarified in his Answer that he is Frederick Tappan, Jr. *See* Answer [2] ("comes Defendant, Frederick Tappan, Jr., (improperly referred to as Frederick Tappan in the Complaint)"). Brown must show cause within ten days of the entry of this Order why the Court should not correct the docket to reflect the Defendant as Frederick Tappan, Jr. Failing to respond will be construed as Brown consenting to the change.

Finally, the parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball within ten days of the entry of this Order to set the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 11th day of April, 2017.

                                                  s/ *Daniel P. Jordan III*
                                                  UNITED STATES DISTRICT JUDGE